Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1881 | **DATE** | 6/21/2004 |
| **CASE TITLE** | Carolyn Bottoms vs. Illinois Department of Human Services, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 7/22/2004 at 11:00 a.m..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss (15-1) is granted in part and denied in part. Accordingly, plaintiff's ADA claims and claims under 42 U.S.C. §§ 1981 and 1983 are dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 2 2 2004 | |
| | Notified counsel by telephone. | | date docketed | 36 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | 15 docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CAROLYN BOTTOMS,

    Plaintiff,

v.

ILLINOIS DEPARTMENT OF
HUMAN SERVICES, and CHICAGO-
READ MENTAL HEALTH CENTER,

    Defendants.

No. 03 C 1881
Paul E. Plunkett, Senior Judge

## MEMORANDUM OPINION AND ORDER

Carolyn Bottoms has brought this suit against the Illinois Department of Human Services ("IDHS") and the Chicago-Read Mental Health Center ("Chicago-Read") (collectively "defendants") pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1983, 42 U.S.C. § 1981 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, alleging discrimination based on race, color and disability. She also asserts a retaliation claim. Defendants move to dismiss these claims under Federal Rules of Civil Procedure ("Rule") 12(b)(1), 12(b)(2) and 12(b)(6). For the following reasons, the motion is granted in part and denied in part.



**Factual Background**

The parties have litigated variations of this case in administrative proceedings, Illinois state court and in federal court. The following recitation is taken from Bottoms' complaint, court documents and the briefs submitted to us in connection with defendants' motion to dismiss. Bottoms began working for IDHS in 1991 as an office assistant in Chicago-Read's staff development department. In April 1998, she took a leave of absence under an IDHS family leave program. When she returned in October 1998, Bottoms was transferred to an office assistant position in the general stores department because her previous position had been abolished. Her supervisor in the general stores department was Marilyn Targos ("Targos").

Bottoms alleges that she was discriminated against on numerous occasions. She claims that in October 1998, defendants resisted her request for an air purifier for her work area. Chicago-Read was cited by the Illinois Department of Labor for conditions that were detrimental to Bottoms' health. After an unreasonable delay of four months, she was eventually provided with an air purifier. She also alleges that on three separate occasions in January 1999 she was denied access to her workplace to conduct union business even though she was, at that time, a union steward. Bottoms says she received racial hate mail through the interoffice mail system on February 4, 1999. She also alleges that she failed to receive a promotion that should have been hers because she was the only bidder and was qualified.

Bottoms alleges that defendants have retained in her personnel file documents relating to disciplinary action even though the documents should have been expunged under two settlement agreements. Bottoms was asked to submit to twice-weekly supervision meetings, which she refused to attend. She says she was disciplined many times for insubordination: she received two twenty-

nine day suspensions, a one-day suspension and two written reprimands for her alleged refusal of supervision. Bottoms filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in June 1999.

Bottoms also claims that Targos hit her and was aggressive towards her on at least three occasions. Targos was not disciplined, investigated or asked to submit to a fitness-for-duty evaluation for her behavior. In May 1999, Bottoms was placed on administrative leave without a hearing or without the opportunity for reassignment pursuant to policy.[1] While on this leave, Bottoms was informed by mail in September 1999 that she was to report to Chicago-Read's psychiatrist for a fitness-for-duty evaluation. She did not comply with this directive. Bottoms was discharged by IDHS on November 16, 1999. She filed a charge of discrimination with the Illinois Department of Human Rights on May 15, 2000, where she claimed she was discharged "in retaliation for opposing unlawful discrimination." (Compl. Ex. A.) She said in the charge of discrimination that Chicago-Read's reason for the termination was insubordination. (*Id.*)

Bottoms litigated her discharge before the Illinois Civil Service Commission ("Civil Service Commission"). An administrative law judge ("ALJ") held that Bottoms's discharge was warranted. (Mot. to Dismiss Ex. A at 30.) On September 20, 2000, the Civil Service Commission adopted the ALJ's findings and conclusions and upheld IDHS's decision to discharge Bottoms. (*Id.* Ex. B.) Bottoms filed a petition for administrative review in the Circuit Court of Cook County, Chancery Division. The circuit court upheld the decision of the Civil Service Commission. (*Id.* Ex. D at 2.) The Illinois Appellate Court affirmed. (*Id.* Ex. D at 21.) Bottoms sued IDHS, Chicago-Read and

---

[1] Although not clear from her complaint, the documents submitted by defendants in support of their motion to dismiss suggests that Bottoms was placed on administrative leave because of a physical (or near physical) altercation with a co-worker. (Mot. to Dismiss Ex. D at 10; Ex. G at 3.)

two individuals in federal court, alleging violations of Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 1983 ("*Bottoms I*"). (*Id.* Ex. E.) On September 11, 2000, Judge Conlon granted defendants' motion to dismiss in part and denied it in part. (*Id.* Ex. F at 10.) On April 24, 2001, Judge Conlon granted IDHS and Chicago-Read's motion for summary judgment on the remaining claims. (*Id.* Ex. G at 12.)

In March 2003, Bottoms filed the complaint before us now. Defendants have filed a motion to dismiss, asserting many grounds for dismissing the complaint, including: the Eleventh Amendment, the *Rooker-Feldman* doctrine, res judicata and collateral estoppel, and the statute of limitations.

## Discussion

*1. Eleventh Amendment*

Bottoms has brought her claims under a number of federal statutes. The claims brought under 42 U.S.C. §§ 1981 and 1983 and the ADA, however, are barred by the Eleventh Amendment. *See Velasco v. Illinois Dep't of Human Servs.*, 246 F.3d 1010, 1016 (7th Cir. 2001) (ADA); *Hearne v. Board of Educ. of City of Chicago*, 185 F.3d 770, 776 (7th Cir. 1999) (42 U.S.C. §§ 1981 and 1983). In general, a state may claim immunity from suit in federal court under the Eleventh Amendment. *Kroll v. Board of Trustees of the Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991). A state agency is treated the same as the state. *Id.* A state's sovereign immunity is not absolute, however; in some cases, a suit may continue against a state or its officials. *Ameritech Corp. v. McCann*, 297 F.3d 582, 585 (7th Cir. 2002). A state may waive its sovereign immunity and consent to suit in federal court or "Congress may use its enforcement powers under the fourteenth

amendment to abrogate a [state's] eleventh amendment immunity." *Id.* (quoting *MSA Realty Corp. v. Illinois*, 990 F.2d 288, 291 (7th Cir. 1993)).

Bottoms argues that the state of Illinois has waived its sovereign immunity with respect to suits under 42 U.S.C. §§ 1981 and 1983 as well as suits under the ADA.[2] She says that section 5 of Public Act 93-0414, which amended the State Lawsuit Immunity Act ("Immunity Act"), 745 ILCS 5/1 *et seq.*, removed the sovereign immunity barrier to suits brought under various federal laws, including the ADA and Title VII. (Response at 12.) There are a few problems with this argument, as defendants point out. First, while the Immunity Act amendments do create exceptions to the state's sovereign immunity, the only exceptions relevant here are for Bottoms' claims brought under the ADA and Title VII. *See* 745 ILCS 5/1.5 (new section to Immunity Act created by section 5 of Public Act 93-0414). There is no mention in the amendments of the state's waiver of sovereign immunity for claims brought under 42 U.S.C. §§ 1981 and 1983.

In addition, the Immunity Act amendments became effective January 1, 2004, and they are not retroactive. Illinois has adopted the retroactivity test articulated by the Supreme Court in *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). *See Foster Wheeler Energy Corp. v. LSP Equip., LLC*, 805 N.E.2d 688, 692 (Ill. App. Ct. 2004) (applying retroactivity analysis of *Landgraf*). The first step in the *Landgraf* analysis is to determine whether the legislature has clearly indicated the temporal reach of an amended statute. *Id.* Illinois courts have said that the Illinois legislature always indicates the temporal reach of an amended statute because, where, as in this case, the legislature fails to clearly indicate in the amended statute itself its position on retroactive application,

---

[2] Our court of appeals has said that state employers are not immune from suits under Title VII. *See Varner v. Illinois State Univ.*, 226 F.3d 927, 936 (7th Cir. 2000).

then the default provisions of the Statute on Statutes, 5 ILCS 70/4, apply.³ *Id.* (citing *Caveney v. Bower*, 797 N.E.2d 596, 601 (Ill. 2003)). Section 4 of the Statute on Statutes prohibits retroactive application of substantive changes to statutes. *See Caveney*, 797 N.E.2d at 602 (citing *People v. Glisson*, 782 N.E.2d 251 (Ill. 2002)). The Immunity Act amendments created by section 5 of Public Act 93-0414 do not apply to Bottoms's claims. Her claims pertain to conduct that occurred in 1999 and her case was already pending before us when the Immunity Act amendments became effective. Thus, the state and its agencies are immune from Bottoms' claims under 42 U.S.C. §§ 1981 and 1983 and the ADA.⁴

2. *Rooker-Feldman Doctrine*

Defendants next argue that Bottoms' claims are barred by the *Rooker-Feldman* doctrine.⁵ "The *Rooker-Feldman* doctrine provides that lower federal courts are precluded from exercising jurisdiction over claims that would require them to review a final judgment of a state court." *Rizzo v. Sheahan*, 266 F.3d 705, 713 (7th Cir. 2001). When determining the applicability of the *Rooker-Feldman* doctrine, courts must determine whether a plaintiff's alleged injury resulted from the state court judgment itself or is distinct from that judgment. *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir.

---

³ Bottoms argues that the use of the words "former employee" in the Immunity Act represents the legislature's intent to give retroactive effect to section 5 of Public Act 93-0414. According to Bottoms, the legislature clearly anticipated and expected the state to be amenable to suits by previously terminated employees. This argument is unpersuasive. The legislature must express clearly that it intends to give retroactive effect to an amendment. *See Caveney*, 797 N.E.2d at 601. *See also Bartley v. United States Dep't of Army*, 221 F. Supp. 2d 934, 949-951 (C.D. Ill. 2002) (state must make clear declaration that it intends to submit to federal jurisdiction) (citing *College Savings Bank*, 527 U.S. 666, 675-76 (1999)).

⁴ We do not reach defendants' statute of limitations argument.

⁵ The doctrine is derived from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

1996). The *Rizzo* court distinguished between a "federal claim alleging injury caused by a state court judgment (necessarily raising the *Rooker-Feldman* doctrine) and a federal claim alleging a prior injury that a state court failed to remedy (raising a potential res judicata problem but not *Rooker-Feldman*)." *Rizzo*, 266 F.3d at 714 (quoting *Garry*, 82 F.3d at 1366) (internal quotations omitted). Bottoms alleges here an injury that occurred before she sought relief in state court; the injury did not result from the state court judgment itself. She claims she suffered from discrimination in the workplace and the Illinois courts did not grant her the relief she sought – a determination that she should not have been terminated. Her injury occurred before she sought relief in state court. Thus, the *Rooker-Feldman* doctrine does not bar her claims.

*3. Res Judicata and Collateral Estoppel*

We are left to consider Bottoms' Title VII claims alleging discrimination and retaliation. Title VII prohibits discrimination on the basis of race, color, religion, sex and national origin and prohibits an employer from discriminating against an employee who has filed a charge of discrimination. 42 U.S.C.A. §§ 2000e-2, 2000e-3(a) (2003). Bottoms' complaint identifies numerous instances of discrimination, for example, receiving racial hate mail through the interoffice mail system, being denied access to the workplace and being denied a promotion. However, many of these claims are time-barred. In Illinois, an individual must initiate a claim by filing an EEOC charge within 300 days of the alleged discrimination. *See Hall v. Bodine Elec. Co.*, 276 F.3d 345, 352 (7th Cir. 2002). Bottoms filed her charge on May 15, 2000, so under the general rule, conduct

that occurred prior to July 1999 is time-barred.[6] In her response to defendants' motion to dismiss, Bottoms acknowledges the 300-day cut-off date and focuses her arguments on events that took place between July 1999 and May 2000, namely, the alleged discriminatory requirement that she undergo a fitness-for-duty examination and the retaliatory nature of her discharge. (Response at 2.)

Defendants first argue that, because Bottoms litigated her claims in state court, res judicata bars her from bringing her claims here. We do not agree. To determine whether res judicata applies, we look to Illinois law to determine if Illinois courts would give preclusive effect to the state court judgment. *Jones v. City of Alton*, 757 F.2d 878, 883 (7th Cir. 1985). In Illinois, under the doctrine of res judicata, or claim preclusion, resolution of a previous case bars litigation of a later claim if: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there is an identity of cause of action; and (3) there is an identity of parties or their privies." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998). Res judicata also bars litigation of issues which could have been, but which were not, litigated in prior proceedings. *See Welch v. Johnson*, 907 F.2d 714, 720-21 (7th Cir. 1990). The burden is on the party asserting preclusion to show "with clarity and certainty that the issue was or could have been determined by the prior judgment." *Jones*, 757 F.2d at 886.

One general limitation on the application of res judicata, however, is that it cannot apply when the party against whom the earlier judgment is asserted did not have a full and fair opportunity to litigate the issue in the earlier case. *Id.* at 884. This limitation is applicable here. Bottoms is presenting to us her claims of racial discrimination and retaliation in violation of Title VII. These

---

[6] We do not, for example, address Bottoms's specific complaints regarding the racial hate mail, the denial of the promotion, the delay in receiving an air purifier, Targos's physical aggression toward her, Targos's filing of false incident reports, the unauthorized retention of disciplinary reports in Bottoms's personnel file and Bottoms's initial placement on administrative leave, all of which occurred prior to July 1999. (Mot. to Dismiss Ex. E.)

claims were not litigated in the state court proceedings and, according to the Illinois Appellate Court, they could not have been.

In its opinion, the Illinois Appellate Court commented that

> much of Bottoms' argument is tangential to the issues before this Court. She continually argues that her discharge was a result of racial discrimination and relation for the complaints that she filed with the [EEOC].
>
> * * *
>
> Whether or not Bottoms suffered discrimination at the hands of Chicago-Read is not a determination for this court to make under the circumstances presented here. . . . We will not consider this argument.

(Mot. to Dismiss Ex. D at 20.) The Illinois Appellate Court then cites to *Cooper v. Illinois State Univ.*, 772 N.E.2d 396 (Ill. App. Ct. 2002), for the proposition that the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.*, provides the exclusive vehicle for bringing employment discrimination claims in Illinois. *But see Jones*, 757 F.2d at 882 (noting that in some cases "Illinois appellate courts have considered defenses of racially discriminatory selective enforcement of employment regulations in determining whether there was "cause" for discharge"). The state court proceedings only addressed whether Bottoms' discharge for insubordination was warranted given the fact that she did not submit to a fitness-for-duty evaluation. Although it seems Bottoms did raise a discrimination defense in the Civil Service Commission proceedings before the ALJ, *see* Ex. A ¶ 97, in his findings, the ALJ said only: "one of the witnesses who testified against [Bottoms] was an African American as is [Bottoms]." *Id.* *See also id.* ¶ 46. The Illinois Appellate Court reviewing the Civil Service Commission's findings clearly did not consider her racial discrimination allegations relevant. (Mot. to Dismiss Ex. D at 20.) Bottoms did not have an opportunity to raise her discrimination claims in the state proceedings and therefore those claims are not barred by res judicata. *See Jones*, 757 F.2d

at 882-86 (where plaintiff has no opportunity to raise racially discriminatory treatment as defense to employment discharge before city civil service commission and state courts would not consider it, Illinois courts would not apply claim preclusion and, accordingly, claim not barred in federal court); *Welch*, 907 F.2d at 720 (party asserting res judicata has burden of showing with clarity and certainty what was determined in prior judgment).

Defendants also argue that collateral estoppel prevents Bottoms from litigating her claims at this time. "Under the doctrine of collateral estoppel, once a court has decided an issue necessary to its judgment, that decision is conclusive in a subsequent suit on a different cause of action involving a party to the prior litigation." *Kunzelman v. Thompson*, 799 F.2d 1172, 1176 (7th Cir. 1986). In order to invoke collateral estoppel, four conditions must be met: (1) there was a final judgment on the merits in the prior proceeding; (2) the issue for which estoppel is sought was essential to that decision; (3) the party against whom estoppel is invoked had a full opportunity to address the issue; and (4) the issue decided in the prior proceeding is identical to the issue presented in the current action. *Ray v. Indiana & Michigan Elec. Co.*, 758 F.2d 1148, 1150 (7th Cir. 1985).

Defendants assert that the issues raised here are identical to the ones raised and decided in *Bottoms I* before Judge Conlon. Many of the issues are the same, such as Bottoms's claims regarding the receipt of interoffice hate mail, the failure to obtain the promotion and the improper retention of documents in her personnel file. These issues are disposed of, however, under the 300-day EEOC filing requirement.[7] All we are left with are Bottoms's Title VII claims for discriminatory discharge, due to race or retaliation. These particular issues, however, were not addressed in the proceedings before Judge Conlon. (Mot. to Dismiss Ex. F at 10; Ex. G at 6, 8-10, 11.)

---

[7] Collateral estoppel may also bar these claims.

-10-

Moreover, res judicata would not bar these claims because Bottoms did not have the right to present these claims before Judge Conlon. Before Bottoms can bring her claims in federal court, she is required to have filed a charge of discrimination with the EEOC. The particular events that she complains of before us now were not included in the June 1999 EEOC charge related to the case before Judge Conlon. Her discharge, which occurred in November 1999, was a discrete act that constituted a separate violation of Title VII. It was a claim she could not have brought in earlier proceedings before Judge Conlon. (Ex. F at 10.) *See Zugay v. Progressive Care, S.C.*, 180 F.3d 901, 902 (7th Cir. 1999) (before filing a lawsuit under Title VII, a plaintiff must timely file a charge with the EEOC and receive a right-to-sue letter).

In *Green v. Illinois Dep't of Transp.*, 609 F. Supp. 1021 (N.D. Ill. 1985), Judge Aspen addressed whether res judicata should be applied to bar claims stemming from conduct that occurs after the filing of the first complaint but before judgment. In *Green*, the plaintiff was terminated after he filed suit claiming a failure to promote and retaliatory harassment in violation of Title VII but before final judgment in that suit was issued. He then sued his former employer for race discrimination based on his termination. Judge Aspen held that res judicata would not bar the plaintiff's Title VII claim for discriminatory discharge. The termination was a new and separate claim for relief under Title VII and the plaintiff was not required to amend his prior complaint to add the new claim. Judge Aspen noted that even if res judicata implied a general duty to amend, the plaintiff probably would not be able to amend his complaint because he had not completed the EEOC administrative process. *Id.* at 1025-26. *See also Jackson v. City of Chicago*, 38 F. Supp. 2d 648, 650 (N.D. Ill. 1999) (plaintiff not required to amend complaint or ask EEOC for immediate right-to-sue letter to include later actions of discrimination). We find the *Green* case instructive.

The conduct at issue before Judge Conlon occurred between August 1998 and June 14, 1999. (Mot. to Dismiss Ex. G at 6.) Judge Conlon did not specifically address Bottoms' claims relating to her discharge and could not have addressed them because Bottoms had not yet completed the administrative process. *See* Restatement (Second) of Judgments, § 26(1)(c) (1982) (claim preclusion does not apply where limitations on first court's jurisdiction prevented litigation of theory or availability of remedy). Defendants' motion to dismiss Bottoms' Title VII claims for discrimination and retaliation that occurred after July 20, 1999 is denied.[8]

*4. Chicago-Read As Defendant*

Defendants also seek to dismiss Chicago-Read as a defendant from this suit, arguing that it is not a suable entity. Bottoms responds by saying that until defendants provide a supporting affidavit or information in which IDHS acknowledges that it is liable for the actions of Chicago-Read and its supervisory employees, Chicago-Read should not be dismissed from the case.

Title VII actions must be brought against the "employer." When a state entity is sued, "employer" is understood to mean the "the particular agency or part of the state apparatus that has actual hiring and firing responsibility." *Hearne*, 185 F.3d at 777. We do not have sufficient information at this stage in the litigation to determine that Chicago-Read is not Bottoms' "employer" as that term is used in Title VII. Therefore, we will not dismiss Chicago-Read from the case at this time.

---

[8] Bottoms asserts that July 15, 1999 is the cut-off date for the claims she filed with the Illinois Department of Human Rights and the EEOC on May 15, 2000. According to our calculations, 300 days before May 15, 2000 is July 20, 1999.

## Conclusion

For the reasons stated above, defendants' motion to dismiss Bottoms' claims is granted in part and denied in part. Defendants' motion to dismiss Bottoms' ADA claims and claims under 42 U.S.C. §§ 1981 and 1983 is granted; those claims are dismissed with prejudice. Defendants' motion to dismiss Bottoms' Title VII claim with respect to conduct that occurred after July 1999 is denied.

**ENTER:**

**UNITED STATES DISTRICT JUDGE
PAUL E. PLUNKETT**

**DATED:** JUN 2 1 2004